UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SUPERVALU, INC. <br><br> *Plaintiff*, <br><br> v. <br><br> UNITED FOOD AND COMMERCIAL WORKERS UNION AND EMPLOYERS MIDWEST PENSION FUND <br><br><br><br> *Defendant.* | Case No. 1:21-CV-5625 |

## COMPLAINT

Plaintiff SuperValu, Inc. ("Plaintiff" or "SuperValu"), by and through its undersigned counsel, hereby files this Complaint against Defendant United Food and Commercial Workers Union and Employers Midwest Pension Fund ("Defendant" or the "Fund"), and alleges as follows:

## INTRODUCTION

1. This is an action under the Employee Retirement Income Security Act of 1974, as amended ("ERISA") to modify and/or vacate the September 21, 2021 arbitration award (the "Award") issued by Arbitrator Hon. Wayne R. Andersen (Ret.) in SuperValu, Inc. v. United Food and Commercial Workers Union and Employers Midwest Pension Fund, Case No. 01-19-0004-1573 (the "Arbitration").

2. The Arbitrator incorrectly concluded that the Fund did not violate ERISA when the Fund included SuperValu's pre-sale contribution history for certain stores in its calculation of SuperValu's withdrawal liability payment schedule, despite the fact that these stores were previously sold by SuperValu in an asset sale that qualified for a statutory withdrawal liability

exception under Section 4204 of ERISA ("Section 4204") (and the Fund made no claim that the transactions did not qualify for the Section 4204 exception).

3. The Arbitrator incorrectly found that the Fund did not violate ERISA when it excluded only the contribution history of the stores related to the plan year of the sale and the four plan years preceding the sale.

4. The Arbitrator's decision is erroneous as a matter of law because, *inter alia*, in the context of an asset sale under Section 4204, Section 4204(a)(1)(C) provides that the asset seller remains only "secondarily" liable to the plan for withdrawal liability with respect to the operations that it sold "if" the liability of the purchaser is not paid. Nothing in the governing statutes, regulations, legislative history, congressional intent or applicable law provides for any alternative interpretation of Section 4204.

5. In this action, Plaintiff seeks an order vacating the Award pursuant to ERISA § 4221(b)(2), 29 U.S.C. § 1401(b)(2), granting judgment in SuperValu's favor on the issue of whether the Fund properly calculated SuperValu's payment schedule, and ordering the Fund to recalculate SuperValu's payment schedule and refund to SuperValu any overpayments made under the errant payment schedule, with interest.

## JURISDICTION AND VENUE

6. This Court has personal jurisdiction over the Fund because, pursuant to ERISA Section 4301(d), 29 U.S.C. § 1451(d), it resides and does business within the United States.

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because SuperValu is a contributing employer to the Fund who seeks relief pursuant to ERISA §§ 4221(b)(2) and 4301(a), 29 U.S.C. §§ 1401(b)(2) and 1451(a).

8.  Venue is proper in this District pursuant to ERISA § 4301(d), 29 U.S.C. § 1451(d), because the Fund is administered in this District.

9.  This action is timely filed under ERISA §§ 4221(b)(2) and 4301(a), 29 U.S.C. §§ 1401(b)(2), within 30 days after the entry of the Arbitrator's award dated September 21, 2021. A true and correct copy of the Award is attached hereto as Exhibit A.

## PARTIES

1.  Plaintiff is a wholesaler and retailer of grocery products headquartered in Eden Prairie, Minnesota. It is a wholly owned subsidiary of United Natural Foods, Inc.

2.  Defendant Fund is an employee benefit plan as defined by ERISA Section 3(3), 29 U.S.C. § 1002(3), as well as a multiemployer plan within the meaning of ERISA Section 3(37), 29 U.S.C. § 1002(37) and ERISA Section 4001(a)(3), 29 U.S.C. § 1301(a)(3). According to its latest filed annual report on IRS Form 5500, the Fund is administered at 18861 90th Avenue, Suite A, Mokena, IL 60448.

## FACTUAL BACKGROUND

### Withdrawal Liability and the Sale of Assets Exception Under Section 4204

3.  When a contributing employer to a multiemployer pension plan withdraws from the plan, under Section 4211 of ERISA, the employer is generally obligated to pay its allocable share of the plan's unfunded vested benefits, adjusted, in relevant part, to the extent necessary to reflect the limitations on annual payments under Section 4219 of ERISA. As a general rule, employers are given the option of paying the total amount of the withdrawal liability due in a single lump sum or pursuant to a payment schedule with level annual installments under a statutory formula.

4.  Under Section 4219(c)(1)(C) of ERISA, the amount of a withdrawing employer's maximum annual withdrawal payment is based upon the following formula: the average annual

number of contribution base units paid by the employer for the highest three consecutive years in the ten plan years prior to the plan year of withdrawal multiplied by the highest contribution rate at which the employer had an obligation to contribute during the ten year period ending with the plan year in which the withdrawal occurred.

5. Under Section 4219(c)(1)(B), if the calculated period to pay off the withdrawal liability exceeds 20 years, the employer's liability is limited to 20-years of installment payments (the "20-year cap").

### Section 4204 Overview

1. Under Section 4204, a complete or partial withdrawal from a multiemployer pension plan does not occur where an asset sale meets certain enumerated statutory conditions.

2. After a Section 4204 sale, in the event the purchaser later withdraws from the plan, it is assessed withdrawal liability with respect to the assets that it purchased as if it had been required to contribute to the plan in the year of the sale and for the four plan years prior to the sale for the same amount the seller was required to contribute for such operations for such five plan years.

3. In terms of the seller's potential liability to the plan, Section 4204(a)(1)(C) provides that the asset seller remains only "secondarily" liable to the plan for withdrawal liability with respect to the operations that it sold "if" the liability of the purchaser is not paid.

### SuperValu's Sale of Five Stores Under ERISA Section 4204

4. Pursuant to negotiated collective bargaining agreements with Local 881 of the United Food and Commercial Workers Union ("Local 881"), SuperValu had in the past been making contributions to the Fund on behalf of certain union employees who worked at several Shop 'N Save store locations.

5. In October 2018, SuperValu sold five of those stores to Schnuck Markets, Inc. ("Schnucks"), in an Asset Purchase Agreement that complied with the requirements of with Section 4204, with the last of the five stores transferred to Schnucks on October 19, 2018.

6. In November 2018, SuperValu closed all other Shop 'N Save stores where there were union employees for whom SuperValu was contributing to the Fund.

7. On May 10, 2019, the Fund issued a withdrawal liability assessment to SuperValu, finding that SuperValu had experienced a complete withdrawal from the Midwest Fund for the plan year ended November 30, 2018.

8. As part of its assessment, the Fund acknowledged that SuperValu had sold the five stores under Section 4204. Accordingly, the Fund informed SuperValu that it was not including any of the contribution history for those five stores in allocating the unfunded vested benefits (or "UVBs") to SuperValu. The contribution history of those five stores, therefore, was not part of the Fund's calculation of SuperValu's withdrawal liability prior to adjusting for the 20-year cap. The amount of the withdrawal liability prior to adjusting for the 20-year cap was $42,676,874.

9. Had the Fund applied the same methodology to calculate SuperValu's payment schedule as it did in determining SuperValu's share of UVBs, i.e., excluded the contribution history of the five stores sold to Schnucks under Section 4204, then SuperValu's monthly payments would have been $41,768, for a total of $10,024,320 in payments over twenty years (prior to discounting to a lump sum present value).

10. However, although the Fund's assessment properly excluded all contributions attributable to the Section 4204 asset sale for purposes of the allocation of SuperValu's UVBs, for purposes of determining SuperValu's payment schedule under ERISA Section 4219, the assessment included all CBUs with respect to the stores sold in the Section 4204 asset sale

(excepting out only those CBUs that occurred during the plan year for the year of the sale and the four plan years preceding the sale (the "five-year contribution history")).

11. As a result, the Fund determined that SuperValu's annual withdrawal liability payment would be $1,129,719.40, which amounts to monthly payments of $94,143.29 that were scheduled to begin on July 1, 2019. With the 20-year cap in payment in play, in accordance with the definition of withdrawal liability under ERISA Section 4201, the UVBs attributable to SuperValu needed to be adjusted to the extent necessary to reflect the annual limitation on payments under the ERISA 20-year cap. *See* ERISA Section 4201, 29 U.S.C. § 1399(c)(1)(B). As adjusted by the 20-year cap as interpreted by the Fund, SuperValu is scheduled to make 240 monthly payments of $94,143 each, for a total of $22,594,388 (prior to discounting to a lump sum present value). This is over twice the amount that SuperValu would have paid over 20 years had ERISA Section 4204 been applied correctly so the contribution history from the stores sold to Schnucks had not been included.

12. By using the entire contribution history of the stores sold to Schnucks, the Fund assessed SuperValu the same exact withdrawal liability as if SuperValu had never sold the stores to Schnucks pursuant to Section 4204, but instead had just closed all of the stores. Under either scenario, the Fund would have calculated the payment schedule using the same high three-year annual average (i.e., the contribution history from 2008-2010) and the same high contribution rate for the ten-year period of $1.53.

13. Thus, the decision by the Fund to implement an erroneous method for calculating SuperValu's payment schedule assessed SuperValu as if it had never engaged in a sale of assets under ERISA § 4204. It increased SuperValu's payments to the Fund by $12,570,068 - over

6

double what it would have been assessed had the prior contribution history been excluded as required by law.

### SuperValu's Request for Review and the Arbitration

14. On August 3, 2019, SuperValu timely requested review on a number of grounds, including the Fund's decision to include the CBUs from the five stores sold to Schnucks under Section 4204 in determining SuperValu's payment schedule.

15. The Fund responded on October 2, 2019, finding that there was no basis to modify SuperValu's withdrawal liability assessment or its payment schedule.

16. SuperValu timely demanded arbitration on November 22, 2019.

17. At the outset of the arbitration, the parties agreed to defer resolution on certain additional issues raised in the Arbitration Demand until after the Arbitrator determined the threshold legal question of whether the Fund erred in including the contribution base units for the five stores sold to Schnucks in its determination of the payment amount.

18. The parties submitted cross-motions for summary judgment on that threshold legal question.

19. On September 21, 2021, the Arbitrator issued an Award, in which he found that the Fund did not violate ERISA when it calculated SuperValu's withdrawal liability payment schedule pursuant to Section 4219 of ERISA, notwithstanding that the Fund failed to exclude the entire contribution history for certain stores sold by SuperValu in a Section 4204 asset sale prior to the withdrawal.

20. Following issuance of the Arbitrator Award on the threshold Section 4204 question, SuperValu decided not to pursue the additional issues raised in the Arbitration Demand against the

Fund and to proceed with this action, and has notified the Fund of such decision simultaneously with its filing of this action.

## COUNT I

### Order to Modify/Vacate the Award

### Pursuant to ERISA § 4221(b)(2), 29 U.S.C. § 1401(b)(2)

21. Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

22. The Arbitrator committed clear error when he determined that the Fund could consider the entire contribution history relating to assets sold in the context of an asset sale under Section 4204 for purposes of Section 4219 of ERISA.

23. The Arbitrator's decision is erroneous as a matter of law because, *inter alia*, in the context of an asset sale under Section 4204, Section 4204(a)(1)(C) provides that the asset seller remains only "secondarily" liable to the plan for withdrawal liability with respect to the operations that it sold "if" the liability of the purchaser is not paid.

24. The Arbitrator's determination is in conflict with interpretations of the meaning and purpose of Section 4204 from both the Pension Benefit Guarantee Corporation in PBGC Opinion Letter 83-10 (May 12, 1983) and the Fourth Circuit Court of Appeals in *Borden, Inc. v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 974 F.2d 528 (4th Cir. 1992).

25. In addition, the Arbitrator's determination to allow the Fund to consider the pre-five-year contribution history in this context interferes with and is in contrast to the clear Congressional intent behind Section 4204 in that it has the effect of increasing an employer's liability for a subsequent withdrawal, thus disincentivizing contributing employers from selling assets under Section 4204.

26. The Arbitrator's determination also has the perverse effect of allowing the Fund a double recovery by using the pre-five-year contribution history when assessing withdrawal liability against both SuperValu and Shnucks, which was certainly not Congress' objective in establishing Section 4204.

27. Plaintiff demands that the Award be vacated; that an order be entered:

   a. granting judgment in SuperValu's favor on the issue of whether the Fund properly calculated SuperValu's payment schedule

   b. ordering the Fund to recalculate SuperValu's payment schedule and to refund to SuperValu any overpayments made under the errant payment schedule, with interest; and

   c. granting all other relief that the Court may deem just and appropriate.

(4) attorneys' fees and other costs and disbursements in this action as required by ERISA Section 502(g)(2), 29 U.S.C. § 1132(g)(2); and

(5) costs and expenses under ERISA Section 4301(e), 29 U.S.C. § 1451(c).

(B) Such other and further relief as the Court may deem just.

Dated: October 21, 2021

Respectfully submitted,

/s/ Sari M. Alamuddin
MORGAN, LEWIS & BOCKIUS LLP
Sari M. Alamuddin
110 North Wacker Drive
Chicago, IL 60606
(312) 324-1000
(312) 324-1158

Melissa Hill (*pro hac vice* application forthcoming)
MORGAN, LEWIS & BOCKIUS

9

101 Park Avenue
New York, NY 10178
(212) 309-6000 (tel)
(202) 739-3001 (fax)

Randall C. McGeorge (*pro hac vice* application forthcoming)
MORGAN, LEWIS & BOCKIUS
One Oxford Centre, 32nd Floor
Pittsburgh, PA 15219
(412) 560-3300 (tel)
(412) 560-7001 (fax)

*Counsel for Plaintiff*